Marie Schornick, Appellee, v. The Prudential Insurance Company of America, Appellant.

Opinion filed September 6, 1934.

KRAMER, CAMPBELL, COSTELLO & WIECHERT, for appellant.

BEASLEY & ZULLEY, for appellee.

MR. JUSTICE STONE delivered the opinion of the court.

This is an appeal from the city court of East St. Louis, wherein appellee recovered judgment against appellant in the sum of $780.15. The suit was brought on three insurance policies on the life of George Schornick, appellee's son. The first policy was Company No. 11102567 and was for the sum of $188; the second policy was Company No. 32892384 and was for the sum of $148; the third policy was Company No. 34057536 and was for $222.

Each policy provided for the payment to deceased's executors or administrators unless payment was made under the facility of payment clause. By virtue of its circular which is in evidence as plaintiff's Exhibit D, appellant bound itself to pay, in addition to any other sums due under the policies, accidental death benefits equal to the face amount of the policies upon receipt of due proof that the insured had sustained bodily injury, solely through external, violent and accidental means.

On proofs of death being furnished appellant paid to appellee the sum of $743.96 under the facility of payment clause in the policies. This suit arises out of the claims for payment on account of accidental death of deceased pursuant to said Exhibit D.

On December 6, 1932, deceased came home about 2 o'clock in the afternoon with a rabbit. He cleaned it, fried it and ate a portion of it. Later in the evening he ate the balance. Prior to this time, deceased was strong and healthy.

That night deceased took sick and remained sick until December 8th when a doctor was called. The doctor found that deceased was bloated over the abdomen; his pulse was very high, he had high fever, diarrhea and was vomiting dark blood. The doctor treated deceased until he died. He determined that deceased died from the effects of eating spoiled or poisoned rabbit meat.

Another doctor examined deceased on December 11th. He testified that deceased was at that time dying with terminal pneumonia, that both lungs were affected and he could not determine whether or not there was any evidence of ptomaine poisoning.

Appellant offered no evidence in the case and at the close of appellee's evidence, the court on motion of appellee peremptorily instructed the jury to find the issues for appellee and to assess her damages at $780.15. Such a verdict was returned and judgment was entered thereon after the overruling of a motion for a new trial.

Appellant brings the case here, under the Civil Practice Act, Cahill's St. ch. 110, ¶ 129 *et seq.*

It is urged by appellee that this appeal should be dismissed because appellant's counsel did not comply with the provisions of the Civil Practice Act in perfecting said appeal; that they failed to give notice of appeal within five days after filing notice of appeal

with the clerk; that they did not within five days make proof of service of notice and that they did not comply with the notice feature of the act in regard to filing their appeal bond. On the way to the clerk's office to file their notice of appeal, counsel for appellant stopped at the office of counsel for appellee, gave them a copy of their notice, took their receipt therefor and immediately filed the original notice together with said receipt. This disposes of the first two objections. We do not think it can be seriously contended that this did not comply with the notice of appeal as prescribed by the act. The best proof of service of notice which can be had of any instrument is a receipt for a true copy thereof signed by the party upon whom service is required. This act was enacted to assist litigants in having their cases tried—not to keep them from trying their cases. We do not anticipate any of the disasters prophesied by counsel for appellee in the approval of this service. If any of those dire things should come to pass they will be dealt with as occasion warrants. As to the fixing of the bond, counsel for appellee were present when the court fixed it and provided for its approval, surely they were not injured by not having other notice, nor was violence done to the Practice Act. We are not inclined to indulge in highly technical interpretations of this act—especially until it is generally and uniformly understood. Counsel for appellee in her cross-appeal were guilty of errors equally unimportant and equally technical as those complained of in counsel for appellant. The trial court did not err in refusing to award execution on the judgment.

Appellant contends that this suit was improperly brought by appellee and claims that it should have been brought in the name of the personal representative of deceased. This would be true had appellant not estopped itself to raise that question. Appellant availed itself of its facility of payment plan in paying

to appellee the amount claimed to be due for the loss of life of deceased. It thereby recognized her as the proper person to receive the money due under the policies. That was an overt act in which it exercised its option. It cannot now be heard to raise this question. *McDaniels v. Western & Southern Life Ins. Co.,* 332 Ill. 603.

It is urged that the allegations of the declaration were not proved. It was definitely established that deceased ate a rabbit, that he took violently sick a very short time afterward; that prior to that time he had been strong and healthy. The doctor after describing the symptoms said, "I knew in the beginning that the sickness was due to the rabbit poisoning." This statement in the ordinary treatment of and consultation over human ailments would leave no doubt in the minds of anyone concerning the cause of deceased's sickness. It is positive. It is a conclusion based upon symptoms which fully warrant it. It is proof that deceased died from the effects of eating poisoned rabbit meat. It is uncontradicted by fact or circumstances. Neither court nor jury could have arrived at any other conclusion. The court was fully warranted in giving the instruction.

It is next claimed that the verdict is excessive. When appellant settled with appellee it paid her all that was then due under the proofs for the loss of the life of her insured. This payment included such items as the face amount of the policies. Paid up additions and advanced premiums were returned and were in full compliance with the policies had it not been for the double indemnity provision. The instrument providing for this recites that under proper conditions therein enumerated, it will pay "an accidental benefit equal to the face amount of insurance" stated in the policy. The face amounts stated in the policies amount to $558. Adding to this amount interest from December 14,

1932, the date proofs of loss were furnished to November 28th, the date of the trial and verdict, we have the sum of $584.66. This is the amount appellant owes appellee. We therefore conclude that the judgment is excessive to the extent of the difference between $780.15 and $584.66 or $195.49. It is urged by appellee that this question was not raised on the trial. It was raised on the motion for a new trial and the court there had a chance to correct it. This it should have done.

If appellee will, within 30 days from the filing of this opinion, enter a remittitur to the extent of $195.49, the judgment will be affirmed, otherwise the cause will be reversed and remanded to the city court for a new trial.

*Affirmed on remittitur; otherwise reversed and remanded.*